# 26-624

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

---

WE THE PATRIOTS USA, INC.,
MATTHEW SHERMAN and
BRANDON TISCHER
Plaintiffs-Appellants,
v.
JOHN P. DOYLE, JR.,
Defendant-Appellee.

---

On Appeal from the United States District Court for the
District of Connecticut No. 3:24-cv-01054 - JCH

---

BRIEF AND SPECIAL APPENDIX
OF THE PLAINTIFFS-APPELLANTS

---

NORMAN A. PATTIS
PATTIS & PAZ, LLC
171 Orange St., 2nd Floor
New Haven, CT 06511
Phone: 203-393-3017 / Fax: 203-393-9745
Email: npattis@pattispazlaw.com

**TO BE ARGUED BY:**
**NORM PATTIS**

# TABLE OF CONTENTS

Table of Contents……………………………………………………………..i

Table of Authorities ………………………………………………ii, , iii, iv

Introduction……………………………………………………………….1

Jurisdiction……………………………………………………………..3

Statement of the Issues………………………………………………….3

Statement of the Case……………………………………………………..4

Summary of the Argument………………………………………………..8

Conclusion………………………………………………………………..36

Certificate of Compliance………………………………………………..37

Certificate of Service…………………………………………………….37

Addendum – Special Appendix of the Plaintiffs-Appellants…………………….38

Addendum – Table of Contents of the Special Appendix………………………..39

# TABLE OF AUTHORITIES

**Cases:** **Page**

*Aymette v. State*, 21 Tenn. 154, 160 (1840)……………………………………23

*Baird v. Bonta*, 163 F.4th 723 (9th Cir. 2026)
………………………………2, 3, 8, 9, 10, 21, 27, 28, 29, 31, 33, 34, 35

*Carney v. Adams*, 141 S. Ct. 493, 501-02 (2020)…………………………...17

*Clapper*, 568 U.S. at 409……………………………………………………17

*Conn. Parents Union v. Russell-Tucker*, 8. F.4th 167, 174 (2d Cir. 2021)……..19

*District of Columbia v. Heller*, 554 U.S. 570 (2008)…………………………..7, 23

*Doninger v. Niehoff*, 642 F.3d 334 (2d. Cir., 2011)……………………………12

*Frey v. City of N.Y.*, 157, F.4th 118 (2d Cir. 2025)……………..2, 8, 9, 10, 27, 28, 29

*Gotlin v. Lederman*, 483 Fed. Appx. 583 (2d. Cir., 2012)………………………12

*Hadid v. City of New York*, 730 Fed. Appx. 68 (2d. Cir., 2018)…………………12

*Hedges v. Obama,* 724 F.3d 170, 196 (2d Cir. 2013)……………………………13

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)…..19

*Lujan*, 504, U.S. at 560, 560 N. 1…………………………………………17

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)……………………………7, 8

*Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)……………………………..19, 20

**Cases:** **Page**

*Nunn v. State*, 1 Ga., 243, 248 (1846)……………………………………………9, 22

*N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 142 S. Ct. 2111 (2022)*
……………………………..2, 3, 8, 9, 10, 11, 21, 23, 24, 25, 27, 28, 29, 30, 31, 35

*Puglisi v. Underhill Park Taxpayer Association*, 947 F. Supp. 673, 683
(S.D.N.Y. 1996), aff'd, 125 F.ed 844 (2d Cir. 1997)………………………17

*Ragin v. Harry Macklowe Real Estate Co.*, 6 F. 3d 898, 905 (2d. Cir. 1993)…….20

*Silva v. Farrish*, 47 F.4th 78, 86, (2d Cir. 2022)…………………………………...13

*Singleton v. Wulff*, 428 U.S. 106, 96 S. Ct., 2868 (1976)…………………………16

*Singleton v. Wulff*, 428 U.S. 106, 114 (1976)……………………………………..17

*Snyder v. Phelps*, 562 U.SA. 443 (2011)……………………………………………22

*Spokeo, Inc. v. Robbins*, 578, U.S. 330, 338 (2016)………………………………13

*State v. Chandler*, 5 La. 11 Ann. 489 (1850)……………………………...9, 23

*State v. Reid*, 1 Ala. 612 (1840)……………………………………………………9

*Steffel v. Thompson*, 415 U.S. 452, 459 94 S. Ct. 1209 (1974)…………………..15

*Susan B. Anthony List v. Driehus*, 573, U.S. 149, 159, (2014)…………………...13

*Upsolve, Inc. v. James*, 155 F. 4th 133, 139 (2d Cir. 2025)………………………15

*Vitagliano v. Cnty. Of Westchester*, 71 F.4th 130, 136 (2d. Cir. 2023)…………….13

**Statutes:** **Page**

**Connecticut Statutes:**

Connecticut General Statutes Section 29-33(f)…………………………………..1, 5

Connecticut General Statutes Section 29-35(a)(2)…………1, 4, 19, 24, 26, 33, 34

**Federal Statutes:**

28 United States Code Section 1331………………………………………………..3

42 United States Code Section 1983………………………………………………..3

United States Code Section 1292(a)(1)……………………………………………..3

# INTRODUCTION

On October 1, 2023, "An Act Addressing Gun Violence" became law in Connecticut. In 2024, two Connecticut residents and a public interest group challenged the law on Second Amendment grounds in a case brought in the District of Connecticut. They challenged the restrictions on the open carrying of firearms, as restricted by Connecticut General Statutes Section 29-35, and limitations on the number of handguns that can be purchased in a 30-day period, as restricted by Connecticut General Statutes Section 29-33.

The District Court granted the defendant's motion for summary judgment on grounds of lack of standing and based on the conclusion that the legislation was consistent with the nation's historic concern the regulation of firearms. The plaintiffs seek review of that ruling by way of this appeal.

In the case of one plaintiff, Matthew Sherman, the Court ruled, as a matter of law, that based on Mr. Sherman's deposition testimony that he had no "imminent intention" to purchase a weapon, and he was therefore seeking to vindicate the rights of others.

In the case of another plaintiff, Brandon Tischer, the Court ruled, as a matter of law, that based on Mr. Tischer's limited fisc at the time his deposition was taken, he had no ability to purchase more than three weapons in a month, and therefore,

lacked standing. It further concluded, relying on *Frey v. City of N.Y.*, 157, F.4th 118 (2d Cir. 2025), that even if Mr. Tischer were suddenly solvent enough to purchase four guns a month, the open carry ban is constitutional with the nation's historic tradition of firearm regulation.

Finally, the Court ruled that We The Patriots USA, Inc., lacked standing because it failed to allege a distinct and palpable injury to itself as an organization, and, as pleaded, neither Messrs. Sherman nor Tischer was identified as a member of the organization.

The plaintiffs appeal on the following grounds.

First, the mere fortuities of the individually named plaintiffs' "present intentions" and financial circumstances do not vitiate their very real interest in establishing the right to open carry and purchase firearms.

Second, the District Court's decision is inconsistent with the Ninth Circuit's decision in *Baird v. Bonta*, 163 F.4th (9th Cir. 2026), which provides a far more convincing account of the nation's historical tradition of treating firearms.

Third, the District Court misreads the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022).

And, finally the District Court misapplies the standing doctrine as established as to each plaintiff.

## JURISDICTION

The District Court had federal question jurisdiction under 28 U.S.C. Section 1331 and 42 U.S.C. Section 1983. This Court has jurisdiction arising under U.S.C. Section 1292(a)(1).

## STATEMENT OF THE ISSUES

I. Whether the District Court Failed to Give the Plaintiffs Every Reasonable Inference As Required In Evaluating the Defendant's Motion for Summary Judgment as to the Individually Named Plaintiffs on the Defendant's Claim of Lack Of Standing?

II. Whether the District Court Erred in Ruling that We The Patriots USA, Inc. Lacked Standing?

III. Whether the District Court Misapplied the Ruling in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022), and Otherwise Ignored the More Convincing Argument About the Nation's "Historic" Commitment to Firearms Regulation, as Stated by the Ninth Circuit in *Baird v. Bonta*, 163 F.4th 723 (9th Cir. 2026)?

## STATEMENT OF THE CASE

In an apparent effort to address gun violence, Connecticut lawmakers enacted legislation to curb the ability openly to carry firearms and limited the number of firearms a person can purchase within a given period. This exercise of the state's police power is at loggerheads with the Second Amendment's guarantee of an individual right to bear arms. Two private citizens and a public interest group sought to challenge the legislation in a suit for a declaratory judgment and injunctive relief. The District Court dismissed the action on standing grounds and held that the statutory scheme was consistent with the Second Amendment of the United States Constitution.

The "open carry" limitation is codified at Connecticut General Statutes Section 29-35(a)(2) and reads as follows:

> (2) No person shall knowingly carry any firearm with intent to display such firearm, except when such person is within such person's dwelling house, on land leased, owned or otherwise possessed by such person or within the place of business of such person, or such person is engaged in firearm training or bona fide hunting activity, or such person has been explicitly permitted by another person to carry such firearm with intent to display such firearm while within such other person's dwelling house, on land leased, owned or otherwise possessed by such other person, or within the place of business of such other person. For the purposes of this subdivision, a person shall not be deemed to be carrying a firearm with intent to display such firearm if such person has taken reasonable measures to conceal the fact that such person is carrying a firearm. Neither a fleeting glimpse of a firearm nor an imprint of a firearm through such person's clothing shall constitute a violation of this subdivision. If a person displays a firearm temporarily while engaged in self-defense or other conduct that is otherwise lawful, such display shall not constitute a

> violation of this subdivision. The provisions of this subdivision shall not apply to any (A) security guard or other person employed to perform the duties of protecting public or private property while in the performance of such duties or traveling to or from such duties,…

The quantitative limitation on the purchase of firearms within a given time frame is codified at Connecticut General Statutes Section 29-33(f) and reads as follows:

> (1)The Commissioner of Emergency Services and Public Protection shall not issue more than three authorization numbers for sale at retail of a pistol or revolver to any transferee within a thirty-day period, except that if such transferee is certified as a firearms instructor by the state pursuant to section 29-28 or the National Rifle Association, said commissioner shall not issue more than six authorization numbers within a thirty-day period.

The action was commenced against New Haven's State's Attorney John P. Doyle, as the principal law enforcement agent in New Haven County. A previous action, naming Gov. Ned Lamont, was amended in response to an objection filed by the defendants that the governor had no role in enforcement of the law.

The defendant moved to summary judgment on standing grounds contending that neither of the individual defendants had a real interest in the litigation because, based on their deposition testimony, given his limited means, one plaintiff could not realistically purchase more than three guns in a month, and that the other really had no intention to openly carry. The public interest group had no real interest, either, the Court held, as neither individually named plaintiff was a member.

Even if there were standing, the Court concluded, the statutes were nonetheless constitutional as legitimate exercises of the state's historic interest in gun regulation.

The plaintiffs'' claim error as to these District Court rulings as follows:

First, the plaintiffs are entitled to the benefit of every reasonable inference at the summary judgment phase. That a plaintiff is temporarily incapable of purchasing more than three guns a month does not mean he will therefore never be in a position to do so. The court deprived one plaintiff, Mr. Tischer, of an inference to which he is entitled. Mr. Tischer filed suit, complied with discovery, sat for a deposition – these are more than nominal decisions and sacrifices of his right to be let alone. There is no requirement that a plaintiff have the present ability to perform; only that he have an intent to do so. The District Court erred in holding the plaintiff to a standard that vitiates his right to seek a pre-enforcement remedy to prevent the state from violating a Constitutional right.

The District Court comes perilously close to erecting a "magic words" test in concluding that Mr. Sherman's claims, the other individually named plaintiff, should be dismissed because he said in his deposition that he had no present intention to openly carry a firearm. Like Mr. Tischer, he filed suit, complied with discovery, and sat for a deposition, sacrificing his right to be let alone in order to challenge a statute

he regards as a fundamental overstepping of constitutional boundaries by the State of Connecticut.

Second, the District Court transformed what might be a mere defect in the pleadings to defeat a serious challenge to a controversial Constitutional right by We The Patriots USA, Inc. The plaintiffs could easily have moved to amend their complaint to include Mssrs. Sherman and Tischer had become members of We The Patriots USA, Inc., a step that could have, in the Court's eyes, have arguably conferred standing on the organization. Of course, such a move would not have defeated the Court's conclusion that neither plaintiff had an actual prospective injury in fact.

Even without addition of these two members to its roster, We The Patriots USA, Inc., is identified as a group devoted to advancing claims involving individual liberty. The firearms personal right to bear arms is among the most controversial issues of our time. Depriving We The Patriots USA, Inc., a chance to be heard on this issue appears to be an awkward effort to avoid reaching a constitutional issue by means of legalistic trickery.

Finally, the District Court reads the historical record in ways that strains credulity and that transforms the police powers of state governments in ways the earlier generations would have found shocking. Certainly, the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v.*

*City of Chicago*, 561 U.S. 742 (2010) have their critics, but the District Court's decision seeks constructive amendment of the Constitution to eliminate a clearly established Constitutional right and invite a Circuit split. The Ninth Circuits reasoning on how states can regulate the manner in which firearms are carried is both more comprehensive and more convincing. *Baird v. Bonta*, 163 F.4th 723 (9th Cir.

The plaintiffs seek reversal of the District Court and a remand for further proceedings.

## **SUMMARY OF THE ARGUMENT**

Appellant Brandon Tischer possesses Article III standing to challenge Connecticut's open carry restriction. The District Court found that Mr. Tischer previously engaged in open carry in Connecticut, demonstrating past exercise of the protected conduct. Under the pre-enforcement challenge standard, Mr. Tischer has satisfied all three elements: an intention to engage in conduct arguably affected with a constitutional interest, conduct arguably proscribed by the challenged regulation, and a credible threat of prosecution that is sufficiently imminent.

The District Court's rejection of Mr. Tischer's open carry challenge on the merits rests on a fundamental misapplication of the *Bruen* framework. The District Court adopted the resonating of *Frey v. City of N.Y.*, 157, F.4th 118 (2d Cir. 2025),

which permits states to ban open carry so long as concealed carry remains available. However, *Baird* provides persuasive authority demonstrating that *Frey's* reasoning misreads *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022) and improperly treats open carry and concealed carry as fungible or interchangeable modes of bearing arms.

The historical record demonstrates that open carry was unregulated and widely protected at the Founding and Reconstruction. Despite various firearm regulations addressing discharge, storage, and aggressive use, there were no direct statutory bans on the carry of arms at the Founding. Between 1822 and 1850, six state high courts considered the scope of the right to carry firearms and found constitutional significance in the distinction between open and concealed carry. These courts held that open carry was essential to protect the natural and common law right of self-defense.

Critically, antebellum courts explicitly rejected the notion that open and concealed carry are interchangeable. In *State v. Reid*, 1 Ala. 612 (1840), Alabama's highest court ruled that a concealed weapons ban was constitutional, but a ban on open carry would not be, and explicitly rejected the argument that open carry and concealed carry are functionally interchangeable. In *Nunn v. State*, 1 Ga., 243, 248 (1846), the Georgia Supreme Court held that a prohibition against bearing arms openly is in conflict with the Constitution and void. In *State v. Chandler*, 5 La. 11

Ann. 489 (1850), the Louisiana Supreme Court stated that a concealed carry ban was permissible only because it interfered with no man's right to carry arms in full open view, and explicitly rejected the argument that the two kinds of carry were interchangeable.

Connecticut's open carry restriction cannot be justified by reference to historical concealed carry bans because the historical regulations differ fundamentally in both how and why they burden the right to armed self-defense. Historical concealed carry restrictions targeted the concealment of firearms to prevent secret attacks and assassinations. Connecticut's open carry restriction targets the visibility of firearms to prevent public fear and intimidation. These are opposite regulatory approaches justified by different concerns. Under *Bruen's* requirement that modern regulations be relevantly similar to historical regulations in both how and why they burden the right, Connecticut's restriction fails.

*Frey* misread *Bruen* by citing historical concealed carry bans as support for an open carry ban. *Baird* explicitly identifies and refutes this error, demonstrating that *Frey's* reasoning abstracts history at too high a level of generality and improperly uses historical restrictions on one mode to justify bans on another mode.

The availability of concealed carry does not cure the constitutional defect in Connecticut's open carry ban. *Baird* directly addresses and rejects the argument that

the availability of concealed carry cures a ban on open carry. Antebellum courts understood open carry and concealed carry as distinct modes of bearing arms, each with its own constitutional status. The historical tradition protected open carry as the primary and ordinary mode of bearing arms in public. The fact that concealed carry may also be available does not eliminate the constitutional defect in banning open carry, because the historical tradition did not treat these modes as interchangeable.

Under *Bruen's* framework, when a regulation addresses a general societal problem that has persisted since the eighteenth century, the absence of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the second Amendment. Connecticut's open carry restriction addresses the general societal problem of public fear and concern about firearms, a problem that plainly existed at the Founding. Yet open carry was never banned at the Founding or during Reconstruction. This absence of a distinctly similar historical regulation is powerful evidence that Connecticut's restriction is inconsistent with the Second Amendment.

# ARGUMENT

## I. The District Court Failed to Give the Plaintiffs Every Reasonable Inference as Required in Evaluating the Defendant's Motion for Summary Judgment as to the Individually Named Plaintiffs on the Defendant's Claim of Lack of Standing.

### A. Standard of Review

The standard of review on appeal from a grant of summary judgment is de novo. Under this standard, the appellate court independently reviews the record and applies the same legal standards that the District Court was required to apply in determining whether summary judgment was appropriate. Specifically, the appellate court must determine whether there is no genuine dispute as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Doninger v. Niehoff*, 642 F.3d 334 (2d. Cir., 2011).

This court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Hadid v. City of New York*, 730 Fed. Appx. 68 (2d. Cir., 2018). A material fact is one that could affect the outcome of the case under the governing law, and a genuine dispute exists if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Gotlin v. Lederman*, 483 Fed. Appx. 583 (2d. Cir., 2012).

### B. Messrs. Tischer and Sherman Satisfy the Pre-Enforcement Standing Requirements

"To establish Article III standing, a plaintiff must be 'suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Silva v. Farrish*, 47 F.4th 78, 86, (2d. Cir. 2022) (quoting *Spokeo, Inc. v. Robbins*, 578, U.S. 330, 338 (2016)).

In the context of facial pre-enforcement challenges, like those asserted here, a plaintiff has standing "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative. *Hedges v. Obama,* 724 F.3d 170, 196 (2d Cir. 2013).

A plaintiff in a pre-enforcement challenge must demonstrate "(1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest;' (2) that the intended conduct is 'proscribed by' the challenged law; and (3) that there exists a 'credible threat of prosecution thereunder.'" *Vitagliano v. Cnty. Of Westchester*, 71 F.4th 130, 136 (2d. Cir. 2023) (quoting *Susan B. Anthony List v. Driehus*, 573, U.S. 149, 159, (2014).

### C. Messrs. Sherman and Tischer's Interest in Firearms

Plaintiff Matthew Sherman is an adult resident of Hamden, Connecticut and holds a Connecticut permit to carry pistols and revolvers. (Appendix, hereinafter

"App." Vol. 3, 685.) He owns five pistols and several long guns (id.), and regularly carries handguns in public, outside of his home, for self-defense (id.). Mr. Sherman, in compliance with the law, carries his handguns in a concealed manner. (Id.) Although he has not carried a handgun openly in Connecticut, he previously lived in Kansas, where open carry is legal and commonplace, and openly carried there. (Id.) He wishes to openly carry in Connecticut but is prevented from doing so by the law that is at issue in this case. (Id.)

Mr. Sherman has not purchased more than three handguns in a month in Connecticut. He has stated, however, that if he found more than three handguns that he liked, had the money, and it were legal, he would purchase more than three in a month. (Id.) Under the law that is at issue in the present case, he is not able to do so. (Id.)

Plaintiff Brandon Tischer is an adult resident of Wolcott, Connecticut. He owns five handguns and six long guns. (Id.) He holds a Connecticut permit to carry pistols and revolvers and often carries a handgun outside of his home for the purpose of self-defense. (Id.) Before the present law took effect, he regularly carried a handgun openly. (Id.) Currently, when he carries, he does so in a concealed manner. (Id.) He desires to carry openly because he considers it to be a deterrent to attacks. (Id.) Mr. Tischer has been the victim of crime in the past—a knife wielding assailant attempted to carjack him in Hartford. (Id.) Mr. Tischer has not purchased more than

three handguns in a month in Connecticut. He would, if he had the money and it were legal, purchase more than three handguns in a month. (Id.)

The District Court erred in dismissing Sherman's and Tischer's claims by focusing on their lack of prior conduct and detailed future plans than applying the proper pre-enforcement standing framework. Under controlling Second Circuit precedent, a plaintiff establishes pre-enforcement standing by demonstrating an intention to engage in conduct arguably affected by a constitutional interest, that the intended conduct is arguably proscribed by the challenged statute, and that a credible threat of prosecution exists. *Upsolve, Inc. v. James*, 155 F. 4th 133, 139 (2d Cir. 2025)

Both Messrs. Sherman and Tischer satisfy these requirements.

Mr. Sherman, a licensed Connecticut firearm carrier who regularly carries concealed weapons, faces a present legal restraint imposed by the open carry restriction. His lack of prior open-carry conduct does not defeat standing under pre-enforcement doctrine, which explicitly permits challenges before the plaintiff has engaged in the regulated conduct. "[I]t is not necessary himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights. *Steffel v. Thompson*, 415 U.S. 452, 459 94 S. Ct. 1209 (1974).

Mr. Tischer, a licensed purchaser who has expressed his intention to purchase more than three handguns monthly if financially able, faces a present legal restraint imposed by the handgun purchase limitation. His current financial inability does not render his injury speculative; rather, his genuine intention to engage in the prohibited conduct, combined with the present legal restraint, establishes injury in fact.

The District Court's characterization of Mr. Sherman's injury as vindicating others' rights misapplies third-party standing doctrine. Mr. Sherman is not asserting the rights of non-parties; he is asserting his own constitutional right to carry firearms in the manner of his choosing. *Singleton v. Wulff*, 428 U.S. 106, 96 S. Ct. 2868 (1976).

The District Court's suggestion that plaintiffs lack standing due to insufficient traceability and redressability reflects a misunderstanding of the casual chain in pre-enforcement challenges to criminal statutes. The relevant injury is the credible threat of prosecution and the resulting deterrence, not the administrative denial of a permit or authorization number. The State's Attorney, as the official charged with prosecuting violations of Connecticut criminal law, is the source of the prosecutorial threat that causes plaintiffs' injury. An injunction or declaration against the State's Attorney would redress plaintiffs' injury by removing or materially reducing the threat of prosecution in his jurisdiction.

The District Court adopted the defendant's argument on Mr. Tischer's limited fisc.[1] The defendant and the Court conflate present intent with present ability. A person can have intentions that he cannot at present act upon. The inability to transform an inchoate intent into actual action is mere fortuity. There is no evidence

---

[1] "Mr. Tischer indicated that he would only purchase more than three handguns in a month "*if* [he] had … the funds to do it. *Ex. G*, pg. 36 (emphasis added.) Prior to the passage of § 29-33(f), Mr. Tischer had never purchased more than *one* handgun in a 30-day period, let alone four, because "it gets pretty expensive" to do so. *Id*. Pg. 35. And, in his current circumstances, Mr. Tischer's annual salary from his small business is approximately two thousand dollars per year, and he has no other source of disposable income. The cheapest handgun Mr. Tischer had ever purchased was approximately $400. *Ex. G*, Pg. 44. It defies belief that Mr. Tischer could reasonably expend his entire annual salary on handguns, in a 30-day period, when he has never done so before, and then he would be left with no funds to pay for his monthly necessities, let alone any other expenses. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes –that the injury is certainly impending." *Clapper*, 568 U.S. at 409. Mr. Tischer has not and cannot show that he even can feasibly purchase more than three handguns in a month, let alone that he has "concrete plans" to do so. See *Carney v. Adams*, 141 S. Ct. 493, 501-02 (2020) (finding that because plaintiff had not shown that he was "able and ready" to apply for a judicial vacancy in the imminent future, he had failed to establish standing to challenge a state law restricting judgeship eligibility).

At a minimum, to satisfy the "injury in fact" element, a plaintiff must have suffered "an invasion of a legally protected interest" that is "concrete and particularized," meaning "that the injury *must affect the plaintiff in a personal and individual way*." *Lujan*, 504, U.S. at 560, 560 N. 1 (emphasis added). It is well-established that plaintiffs may not use solely to vindicate the rights of others. See, e.g., *Puglisi v. Underhill Park Taxpayer Association*, 947 F. Supp. 673, 683 (S.D.N.Y. 1996), aff'd, 125 F.3d 844 (2d Cir. 1997) ("plaintiffs may only sue for deprivation of their own constitutionally and federally protected rights and not the rights of others"); *Singleton v. Wulff*, 428 U.S. 106, 114 (1976) ("one may not claim standing . . . to vindicate the constitutional rights of some third party"). (DE #32)

to suggest that Mr. Tischer brought this action is mere fortuity. There is no evidence to suggest that Mr. Tischer brought this action to vindicate the rights of third parties.

In this case, the individually named plaintiffs came to court to vindicate rights they value and intend to exercise. They are not strawmen seeking to advance the claims of third parties. The District Court's selective reading of their present circumstances demonstrates willful blindness to the actual litigants and deprives them of the benefit of inferences to which they are entitled at the summary judgment phase.

## II. The District Court Erred in Ruling that We The Patriots USA, Inc., Lacked Standing

### A. Standard of Review

The Appellants rely upon Section 1, A, pp. 11-12, supra for their argument on the standard of review.

### B. Associational Standing Requirements

An association has standing to pursue an action on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of

individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

We The Patriots USA, Inc. is an association and should be afforded associational standing to pursue a constitutional challenge to Conn. Gen. Stat. § 29-35(a)(2). We The Patriots USA, Inc. includes in its membership adult residents of Connecticut who are subject to the statute. Defending and litigating constitutional rights, especially those guaranteed by the Second Amendment, are activities germane to its purpose. App., Vol. 3, 686. This action seeks declaratory and injunctive relief, which do not require individualized proof. Accordingly, the association has standing to pursue a claim on behalf of its adult Connecticut resident members.

The District Court erred in dismissing We The Patriots USA, Inc.'s organizational standing claim by applying an overly restrictive legal standard and improperly resolving factual inferences against the organization at the summary judgment phase. Under Second Circuit precedent, an organization establishes standing by demonstrating a perceptible impairment of its core activities resulting in an involuntary and material burden on those activities. *Conn. Parents Union v. Russell-Tucker*, 8. F.4th 167, 174 (2d Cir. 2021), *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). The critical distinction lies between resources an organization voluntarily expends on political advocacy and resources the organization must divert

from established programs to address the effects of challenged government action on its constituency. The need be only a "perceptible impairment" or an organization's activities to support a conclusion on "injury" in fact. *Nnebe*, 157, citing, *Ragin v. Harry Macklowe Real Estate Co.*, 6 F. 3d 898, 905 (2d. Cir. 1993)

We The Patriots USA, Inc. operates with an established mission centered on education, outreach, and public interest litigation regarding Second Amendment rights. Education and outreach means more than merely litigating. Any dollar spent on litigation is a dollar that cannot spend on education and outreach. The District Court erred in failing to give We The Patriots USA, Inc. the benefit of this simple inference.

The organization has Connecticut members whose rights and legal obligations were directly affected by the Act's statewide changes to carry and sales rules. The district court's characterization of We The Patriots USA, Inc.'s expenditures as merely spending money to advocate conflates voluntary political advocacy with the involuntary diversion of resources necessary to maintain established educational and outreach activities in response to changed legal circumstances.

## III. The District Court Misapplied the Ruling in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597, U.S. 1 (2022) and Otherwise Ignored the More Convincing Argument About the Nation's "Historic" Commitment to Firearms Regulation, as Stated Recently Articulated by the Ninth Circuit in *Baird v. Bonta*, 163 F.4th 723 (9th Cir. 2026)

### A. Standard of Review

The Appellants rely upon section 1 A, pp 11-12 supra. for their argument on the standard of review.

### 1. The Right to Open Carry has Deep Historic Roots

Historically, in the United States, right to keep and bear arms included the right to open carry weapons for self-defense.

In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597, U.S. 1, 142 S. Ct. 2111 (2022), the Supreme Court observed that the manner of carrying firearms publicly was subject to reasonable regulation in the antebellum United States, which falls within the time period between 1791 and 1868. *Bruen*, 597, U.S. at 59. Specifically, as rooted in common law, "individuals could not carry deadly weapons in a manner likely to terrorize others." Id. Additionally, and critically, states could prohibit the concealed carry of firearms so long as they continued to permit them to be openly carried. Id. Subsequently, during Reconstruction, restrictions on the right to keep

and bear arms were still consistent with the "right of the public to peaceably carry handguns for self-defense. Id. At 62.

Jennifer McCutchen, one of the Defendant's historians, provided as an example, a 1798 Massachusetts law which provided that no individual "shall ride or go armed offensively, to the fear or terror of the good citizens of the Commonwealth." (App., Vol. 1, 68) Additionally, another historian, Brennan Rivas, referenced an 1801 Tennessee law that criminalized the carrying of a "dirk, large knife, pistol or any other dangerous weapon, to the fear or terror of any other person." (App. Vol. 1, 93)

The defendant in this case transforms the tender sensibilities of the most apprehensive members of the community into a constitutional standard. Such tender mindedness is not permitted in the First Amendment context, as illustrated by *Snyder v. Phelps*, 562 U.SA. 443 (2011) (even blatantly offensive speech causing emotional distress is protected). There is no constitutional warrant to transform mere open carry with an intent to terrorize; indeed, concluding that merely openly carrying a firearm is the equivalent of an intent to terrorize is ridiculous.

Courts in the nineteenth century also viewed the right to bear arms with a preference to open-carry. The Georgia Supreme Court, for instance in *Nunn v. State*, 1 Ga. 243, 248 (1846), upheld a state prohibition on concealed carry, but that a

"prohibition against bearing arms openly" violates the Constitution. The Louisiana Supreme Court, in *State v. Chandler*, 5 La. 11 Ann. 489, 490 (1850), in approving its state's statute proscribing the concealed carry of weapons, asserted that the "right to carry arms 'in full open view'" is what is "guaranteed by the Constitution of the United States." The Tennessee Supreme Court followed the common law principle in *Aymette v. State*, 21 Tenn. 154, 160 (1840). It held that the right to bear arms means that citizens may carry weapons for common defense, but not for the sole purpose of terrifying people. Dr. Rivas also recounted that carry laws in Texas, Arkansas and Tennessee in the late 1870's and 1880's required firearms and other weapons to be worn or carried openly. (App., Vol. 1, 106)

Although some states prohibited both the open and concealed carry of handguns at the end of the nineteenth century, "state courts usually upheld the restrictions when they exempted army revolvers, or read the laws to exempt at least that category of weapons." *Bruen*, 597, U.S. at 68. The Supreme Court further noted that the "state courts that upheld broader prohibitions without qualification generally operated under a fundamental misunderstanding of the right to bear arms, as expressed in *Heller*." Id.

**2. The Defendant has not produced historic analogues to the sweeping ban on open carry established by Conn. Gen Stat. § 29-35.**

The Defendant identifies several state and colonial statutes that regulated the carrying of firearms. It opens by citing two colonial Pennsylvania laws, one from 1721 and another from 1760, that prohibited individuals from carrying or using guns on land other than their own. Those statutes pre-date not just the Second Amendment, but also the establishment of the United States and thus not historically significant for analysis.

Next, the Defendant references a Kansas law from 1867 which prohibited the carrying of pistols and other weapons. The Supreme Court, however, has dismissed statutes and 12 decisions that allowed for prohibitions without qualification as operating under a fundamental misunderstanding of the right to bear arms. See *Bruen*, 597, U.S. at 68. Accordingly, that law is not consistent with the nation's historical tradition of firearm regulation.

Similarly, the Defendant's reliance on Washington D.C.'s restrictions on public carry (Def. Mem., Doc. 32-1 at 44) is also unavailing. Washington's ordinances that ban public carry fall within the same category of laws that banned carry without qualification. Indeed, they were enacted after the passage of the Second Amendment, which the Supreme Court held in *Bruen* to include the right to carry. The Defendant argues that because Congress debated, as late as 1857, ten

years before the Fourteenth Amendment, whether a ban on all public carry would be allowed under the Second Amendment, "one cannot argue that a ban on open carry would have been unthinkable to the Congress who passed the Fourteenth Amendment a decade later." The Supreme Court closed that debate even if it did take more than a century and a half; a ban on public carry would violate the Second Amendment.

The Defendant also cites to surety and fee laws, such as an 1838 Florida statute that required an annual tax for the open carry of weapons. The Connecticut law at issue in this case through, is not a surety or fee statute for open-carry, but a flat-out prohibition. Moreover, the Supreme Court opined in *Bruen* that it was unlikely surety statutes imposed a "severe restraint on public carry" and that they were not equivalent to bans. *Bruen*, 597 U.S. at 59.

""Going armed" laws, which the Defendant describes as measures that "limited openly carrying weapons in a manner that might amount to 'affray,'" are instructive. Specifically, it references a North Carolina law which "allowed for apprehension of any individual who 'shall go or ride armed with unusual and offensive Weapons, in an Affray, or among any great Concourse of the People'" The quoted text of that particular statute exemplifies the right to carry weapons as understood above: that restriction of it was allowed to prevent purposes of prevent terror and intimidation, not self-defense. Moreover, that statute appears to target

"unusual and offensive weapons," not common defense weapons, which according to the Supreme Court, includes handguns. The Defendant also argues that "other states drafted similar statutes that *limited carry in a manner that might cause 'fear' or 'terror'* throughout the nineteenth century." It further cited in 1801 law from Tennessee that contained the qualifier "go armed to the terror of any person," (Id. At 15), a Maine law from 1821 that contained at similar "to the fear or terror" provision as well as a Delaware statute from 1852 with language that mirrors that of the former statutes.

Unlike the historic affray statutes cited by the Defendant, the statute that is at issue in the present case, Conn. Gen. Stat. § 29-35(a)(2), which was enacted in 2023, does not contain any such qualifying language that makes the open carrying of a firearm criminal only when it is intended to provoke terror. Although the legislature might have had that intent, no intent requirement or limiting language made it into the statute. Thus, the Defendant, which bears the burden in demonstrating that the challenged statute is consistent with the nation's tradition of firearm regulation, would have had to produce a statute that contains a similar flat out ban on open carry. Such a statute however, likely would fall within the category of prohibitions without qualification, which, as previously noted above, would be analogous to laws made under a misunderstanding of the Second Amendment. Accordingly, the Court should conclude that Conn. Gen. Stat. § 219-35(a)(2) is unconstitutional.

### 3. The District Court Misapplied *Bruen* by Treating Open Carry and Concealed Carry as Constitutionally Fungible

The District Court's decision to uphold Connecticut's open carry ban relied fundamentally on the reasoning of *Frey*, which permitted a ban on open carry because concealed carry remained unlawful. *Frey v. City of N.Y.*, 157 F.4th 118 (2d Cir. 2025). This approach treats open carry and concealed carry as interchangeable modes of firearm bearing, a premise that *Baird* directly and persuasively rejects. *Baird v. Bonta*, 163 F.4th 723 (9th Cir. 2026).

*Baird's* reasoning is a direct and pointed challenge to this Circuit's conclusion, and reasoning, in *Frey*. The Second Circuit has yet to respond to the challenge posed by *Baird*, to wit: did *Frey* draw a distinction without difference leading to lethal consequences for the assertion of a Constitutional right?

> The Second Circuit committed a similar error by recently upholding New York's open-carry ban in *Frey v. City of New York*, No. 23-365-cv, 157 F.4th 118, 2025 WL 2679729, at *12 (2d Cir. Sept. 19, 2025). The Second Circuit's analysis relied on a similar misreading of *Bruen*, as well as approaching historical evidence at too high a level of generality. Like the dissent here, the court there claimed that *Bruen* treated open carry and concealed carry as fungible, quoting *Bruen* for the proposition that states "'could lawfully eliminate one kind of public carry—[open carry or] conceal carry—so long as they left open' the other option." Frey, 157 F.4th 118, 2025 WL 2679729, at *12 (alteration in original) (quoting *Bruen*, 597 U.S. at 59). But again, that transparently is not what the Supreme Court said in *Bruen*—indeed, it is telling that the Second Circuit had to modify the Court's language to support its holding. Unaltered, the quotation from *Bruen reads*: "States

> could lawfully eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly." *Bruen*, 597 U.S. at 59.
>
> *Baird* at 737.

The District Court's logic proceeded as follows: because Connecticut permits concealed carry, the state has not eliminated the right to bear arms; therefore, the open carry restriction does not violate the Second Amendment. This reasoning assumes that the availability of one mode of carry satisfies the constitutional requirement regardless of whether another mode is prohibited. However, this assumption conflates two distinct questions: whether a right exists in some form, and whether a particular manner of exercising that right is protected by the Constitution.

*Baird* demonstrates that *Frey's* methodology *Bruen's* historical analogue test. The core methodological flaw that *Baird* identifies is that *Frey* relied on historical restrictions on concealed carry to justify modern bans on open carry. This approach abstracts history at too high a level of generality. Rather than examining the historical tradition specific to open carry, *Frey* generalized from concealed carry restrictions into a principle permitting bans on whichever mode of carry the legislature prefers. This violates *Bruen's* requirement that historical analogues demonstrate relevant similarity in both how and why the right was regulated historically. *N.Y. State Rifle & Pistol Ass'n. v. Bruen*, 597 U.S.1, 142 S. Ct. 2111

(2022). The case also illustrates the dangers of "playing history" with the law – lining up historians with political agendas is dangerous business.

*Baird* explains that concealed carry restrictions are not relevantly similar analogues for open carry bans because they address different conduct and different historical concerns. An historical restriction on one mode of carry does not establish that the Founding generation would have approved of banning another mode entirely. The fact that concealed carry was sometimes restricted does not mean that open carry, a more visible and historically prevalent form of bearing arms, could be prohibited while concealed carry remained available.

While *Frey* is binding precedent on a Second Circuit panel, *Baird* highlights why *Frey's* reading of *Bruen* is questionable and warrants reconsideration. *Baird* is a post-*Bruen* decision directly addressing open carry, and it provides a detailed historical and methodological rebuttal to the rationale that *Frey* adopted. While *Baird* is not binding on this Court, its reasoning demonstrates that the analytical framework underlying *Frey* is vulnerable to serious challenge. The Ninth Circuit's careful examination of why concealed carry history cannot justify open carry bans provides persuasive authority that the district court's *Bruen* analysis was flawed.

At minimum, the case should be remanded for a *Bruen* analysis that does not assume fungibility between open and concealed carry and that tests Connecticut's

law against the correct historical tradition for open carry specifically. The District Court's decision appears to have treated the availability of concealed carry as a sufficient justification for the open carry ban without conducting a rigorous historical inquiry into whether the Founding generation would have approved of banning open carry while permitting concealed carry. A proper *Bruen* analysis would require the District Court to identify historical regulations that specifically addressed open carry in public and that demonstrate the government's historical authority to ban that particular mode of bearing arms. The mere fact that concealed carry was sometimes restricted does not satisfy this requirement.

### B. Connecticut's Open Carry Restriction Violates the Second Amendment Under *Bruen's* Historical Tradition Test.

#### 1. Open Carry for Self-Defense in Public Falls Within Second Amendment Protection

The Second Amendment protects the right to bear arms in public for self defense. *N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 142 S. Ct. 2111*. Open carry, the carrying of a firearm visibly and without concealment, constitutes a mode of bearing arms in public and thus falls within the scope of the conduct the Second Amendment protects. The question is not whether the State may regulate firearms generally, but whether it may prohibit an entire category of lawful bearing conduct based on its visibility.

Under the framework established in *Bruen*, when a regulation targets conduct falling within the Second Amendment's text, the burden shifts to the government to justify that regulation through historical evidence. Connecticut has not met this burden. The State must identify a historical tradition specifically supporting restrictions on open carry, not merely a general power to regulate firearms, and not restrictions on different conduct justified by different concerns.

#### 2. Historical Evidence Demonstrates the Absence of Founding-Era Open Carry Bans and Affirmative Protection in Nineteenth- Century Jurisprudence

*Baird's* analysis provides extensive historical evidence directly relevant to this inquiry. That court found that open carry was widespread and largely unregulated at the Founding. Critically, antebellum courts treated open carry as constitutionally protected and did not regard the availability of concealed carry as a permissible substitute for open carry. Those courts affirmatively rejected the proposition that allowing one mode of carry permits banning another.

This historical record demonstrates that the Founding generation and nineteenth-century courts understood open carry as a protected mode of bearing arms. Connecticut cannot satisfy *Bruen's* requirement by pointing to a historical tradition that does not exist. The absence of Founding-era open carry bans is itself powerful evidence that such restrictions fall outside the Nation's historical tradition.

### 3. Historical Concealed Carry Restrictions Do Not Supply a Valid Analogue for an Open Carry Restriction

Connecticut may argue that historical restrictions on concealed carry demonstrate a tradition of regulating how firearms are carried. This argument conflates two distinct regulatory approaches and misapplies historical precedent.

First, the regulations differ in their operative mechanism. Concealed carry restrictions targeted the concealment of a firearm, the deliberate hiding of a weapon to prevent detection. Open carry restrictions target the visibility of a firearm, the deliberate display of a weapon in plain view. These are opposite regulatory approaches, and historical acceptance of one does not establish acceptance of the other.

Second, and more fundamentally, the regulations were justified by different concerns. Historically concealed carry restrictions were premised on the concerns that concealment facilitated surprise attacks and enabled individuals to carry weapons without detection, thereby undermining public safety by preventing others from knowing who was armed. Open carry, by contrast, operates transparently: the firearm is visible, and the public knows the carrier is armed. The historical justification for restricting concealment, preventing secret attacks, does not translate to a justification for restricting openness.

*Baird* explains that antebellum courts understood this distinction and rejected the idea that allowing one mode permits banning the other. Connecticut's attempt to restrict open carry cannot rely on historical restrictions targeting concealment, because the historical tradition supports the opposite conclusion: that open carry, being transparent and not facilitating secret attacks, was the constitutionally protected norm.

#### 4. Connecticut's Asserted Justification Does Not Constitute a Valid Historical Analogue

Connecticut's legislature stated that the statute aims to address fear and concern prompted by open carry. This justification resembles, at most, historical laws targeting affray, terror and brandishing, conduct involving threatening behavior, aggressive display, or intent to intimidate or frighten others.

However, Connecticut's statute sweeps far more broadly than such historical precedents. The statute criminalizes carrying a firearm with intent to display even absent any threatening behavior, aggressive demeanor, or intent to intimidate. Conn. Gen Stat. § 29-35A. A person lawfully carrying a firearm openly for self-defense, with no intent to threaten or alarm others, may nonetheless violate the statute if the firearm is visible. This is fundamentally different from historical affray and

brandishing laws. Which targeted the manner of conduct, the threatening or aggressive use or display of a weapon, not the mere fact of visibility.

*Baird* explains that affray, terror, and brandishing-type laws are not proper analogues for peaceful open carry bans. *Baird,* Connecticut's statute, by criminalizing open carry based on the intent to display, a concept that encompasses ordinary, non-threatening visibility, attempts to use public fear as a justification for banning an entire category of lawful conduct. This approach lacks historical support. The historical tradition does not permit the State to ban peaceful, non-threatening conduct merely because its visibility may cause concern or alarm to some members of the public.

The fact that Connecticut permits open carry in certain contexts, in one's home, business, or land, and during training or hunting, further demonstrates that the statute is not truly about preventing threatening conduct; rather, it targets the public visibility of firearms in certain settings. Conn. Gen Stat. § 29-35. This selective prohibition cannot be justified by reference to historical affray or brandishing laws, which applied regardless of location and targeted threatening behavior, not mere visibility.

#### 5. The Availability of Concealed Carry Not Cure the Constitutional Defect

The District Court's reliance on the availability of concealed carry as justification for the open carry ban misapplies *Bruen* and conflicts with *Baird's* historical analysis. The question under *Bruen* is not whether the State has left some alternative means of exercising a Second Amendment right, but whether the specific regulation at issue is consistent with the Nation's historical tradition.

*Baird* directly addresses and rejects the argument that the availability of concealed carry cures a ban on open carry. Antebellum courts understood open carry and concealed carry as distinct modes of bearing arms, each with its own constitutional status. The historical tradition protected open carry as the primary and ordinary mode of bearing arms in public. The fact that concealed carry may also be available does not eliminate the constitutional defect in banning open carry, because the historical tradition did not treat these modes as interchangeable.

Moreover, the availability of concealed carry does not address the core historical point: there is no historical tradition supporting a ban on open carry. The state cannot satisfy *Bruen* by pointing to an alternative right; it must demonstrate that the specific regulation, here, the prohibition on open carry, has historical support. It cannot do so.

## CONCLUSION

The appellants seek vacatur of the judgment and remand to the District Court with direction to the court to permit an amended complaint to be filed.

**PLAINTIFFS – APPELLANTS**
**WE THE PATRIOTS USA, INC., ET AL**

By **/s/ Norman A. Pattis, Esq.**

Norman A. Pattis, Esq.
PATTIS & PAZ, LLC
171 Orange St., 2nd Floor
New Haven, CT 06510
Phone: 203-393-3017 / Fax: 203-393-9745
Email: npattis@pattispazlaw.com

## CERTIFICATE OF COMPLIANCE WITH RULE 27(D)

The foregoing brief contains 42 pages, 8629 words, and therefore complies with the type-volume limitations of Fed. R. App. R. 32(6). The brief also contains an Addendum / Special Appendix, which contains 21 pages. The brief has been prepared in 14-point Times New Roman, a proportionally spaced typeface.

**/s/ Norman A. Pattis, Esq.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the above-captioned date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's System.

**/s/ Norman A. Pattis, Esq.**

# 26-624

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

---

WE THE PATRIOTS USA, INC.,
MATTHEW SHERMAN and
BRANDON TISCHER
Plaintiffs-Appellants,
v.
JOHN P. DOYLE, JR,
Defendant-Appellee.

---

On Appeal from the United States District Court for the
District of Connecticut No. 3:24-cv-01054 (JCH)

---

## ADDENDUM
SPECIAL APPENDIX OF THE PLAINTIFFS-APPELLANTS

---

NORMAN A. PATTIS
PATTIS & PAZ, LLC
171 Orange St., 2nd Floor
New Haven, CT 06510
Phone: 203-393-3017 / Fax: 203-393-9745
Email: npattis@pattispazlaw.com

**TO BE ARGUED BY:**
**NORM PATTIS**

# ADDENDUM

# SPECIAL APPENDIX

# TABLE OF CONTENTS


01 DE #40 - Ruling on Motion for Summary Judgment………………40

02 DE #41 - Judgment………………………………………………55

03 Amendment Second………………………………………………56

04 Connecticut General Statutes 29-35(a)(2)……………………………..57

05 Connecticut General Statutes 29-33(f)………………………….……………..58

06 Docket for Case No.: 3:24-cv-01054-JCH……………………………59

07 DE #10 - Plaintiffs' Rule 7.1 Corporate Disclosure Statement…….65

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| WE THE PATRIOTS INC. ET AL,<br>Plaintiff, | : | CIVIL CASE NO.<br>3:24-CV-1054 (JCH) |
| v. | : | |
| JOHN P. DOYLE, JR.,<br>Defendant. | : | MARCH 2, 2026 |

**RULING ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 32)**

## I. INTRODUCTION

The plaintiffs, We the Patriots, Inc. ("We the Patriots"), Mathew Sherman, and Brandon Tischer, bring this suit against John P. Doyle, in his official capacity as the State's Attorney for New Haven, seeking to enjoin enforcement of the Public Act No. 23-53, "An Act Addressing Gun Violence" ("Act"). See generally Complaint (Doc. No. 1). They challenge specifically two provisions: Conn. Gen. Stat. Section 29-33(f), which restricts the number of commercial handguns during a sale, and Conn. Gen. Stat. Section 29-35(a)(2), which restricts the open carrying of firearms. Id. The defendant moved for Summary Judgment arguing, inter alia, that the court lacks subject matter jurisdiction over the plaintiff's claims. See Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Mot. SJ") (Doc. No. 32-1). The plaintiffs opposed the Motion. See Plaintiff's Memorandum in Opposition of Summary Judgment ("Pltf's Opp'n") (Doc. No. 36). The defendant replied in support of his Motion. See Defendant's Reply to Plaintiff's Opposition to their Motion for Summary Judgment ("Reply"). At the court's request (Doc. No. 38), the plaintiffs filed a Sur-reply (Doc. No. 39) ("Sur-reply") to the defendant's discussion of the recently decided case Frey v. City of New York, 157 F.4th 118 (2d Cir. 2025).

For the reasons stated below, the court grants the Motion.

## II. BACKGROUND

The Act in question took effect October 1, 2023, and introduced new restrictions on the carrying and commercial sale of firearms in Connecticut. See Mot. SJ at 2. Section 29-35(a)(2), the open carry provision, mandates that no person shall knowingly carry any firearm with the intent to display such firearm. Id. The law provides exceptions for people in their home, or business, or on their land. Id. There are additional exceptions for firearm training, hunting, and otherwise lawful conduct. Id. The Connecticut Legislature intended to address the fear and concern that may be prompted by open carry. Id. at 3.

The Act also amended section 29-33(f) restricting the number of handguns a person may purchase. Id. The law prohibits the Commissioner of the Department of Emergency Services and Public Protection from "issuing more than three authorization numbers for sale at retail of a pistol or revolver to any transferee within a thirty-day period." Id. at 3. This sale limit only applies to handguns, not to long guns; and there are no limitations on private transactions or purchasing of parts, accessories, or ammunition. Id. at 4. There is also an exception for up to six transfers if an individual is a firearms instructor. Id. at 5. This amendment was enacted due to specific concerns from the Legislature about firearm trafficking and straw purchases. Id. Testimony provides support that the law is intended to curtail an illegal gun market, disarm criminals, and save lives. Id. Studies on the effectiveness of similar laws were presented by numerous experts. Id.

Plaintiffs Mr. Tischer and Mr. Sherman are residents in Connecticut who are licensed to carry and purchase firearms. See Local Rule 56(a)2 Statement of Facts in

Opposition to Summary Judgment Plaintiffs' Response to the Defendant's Joint Statement of Undisputed Facts at ¶ 1 ("Stat. of Facts") (Doc. No. 36-1). Mr. Sherman currently owns five pistols and regularly carries a concealed firearm outside of his home for personal safety. Id. at ¶¶ 45,46. Mr. Sherman would like to openly carry a firearm in Connecticut. Id. at ¶ 48. Mr. Sherman has never open carried in Connecticut and has never purchased more than three handguns in a year, nor does he have any intention to do either. Id. at ¶ 5. He seeks to stand up for the rights of those who do. Id. Mr. Sherman has never purchased more than three handguns in a month, and he would not be able to because he could not afford to do so. Id. at ¶ 6.

Mr. Tischer owns five handguns and also regularly carries concealed handguns for self-defense. Id. at ¶ 51 Mr. Tischer has never purchased more than three handguns in a month, nor has he ever attempted to, because it is expensive. Id. at ¶ 2. Currently, Mr. Tischer's annual salary from his business is approximately $2,000 dollars a year, and he has no other source of disposable income. Id. at ¶ 3.

We the Patriots identifies itself as a "charity" that is allegedly "dedicated to promoting and defending constitutional rights, including Second Amendment Rights, through education, outreach, and public interest litigation." Id. at ¶ 7. We the Patriots includes members who are adult residents of Connecticut. Id. at ¶ 60.

The plaintiffs brought suit against State's Attorney Doyle on June 17, 2024, who they allege "has responsibility for prosecuting violations of the State of Connecticut's criminal law." See Mot. SJ at 6. The plaintiffs' claim is pursuant to the Second Amendment of the Constitution. Id.

Case 3:24-cv-01054-JCH Document 40 Filed 03/02/26 Page 4 of 15

## III. LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." See Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." See LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV. DISCUSSION

As an introductory matter, the individual plaintiffs and We the Patriots, must show the court has subject matter jurisdiction over their claims. They have not done so. Mr. Sherman and We the Patriots lack standing on all claims, and Mr. Tischer lacks standing to challenge the commercial sales limit. Additionally, no plaintiff likely has standing to challenge the commercial sale limit because no plaintiff can establish

traceability to the defendant or that their injury would likely be redressed by the relief they seek.

A. Mr. Sherman lacks standing on all claims because he seeks to vindicate the rights of others, and can establish no actual or imminent injury

"To establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.' " See Silva v. Farrish, 47 F.4th 78, 86 (2d Cir. 2022) (citing Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)). Constitutional standing is designed to ensure the federal courts do not exceed their traditional authority. Id. Standing is an essential part of a plaintiff's case, and each element must be supported. See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

The plaintiffs have alleged a facial pre-enforcement challenge; a plaintiff only has standing when the "fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative.'" See Hedges v. Obama, 724 F.3d 170, 196 (2d Cir. 2013). In the context of a pre-enforcement challenge, "a plaintiff must [have]: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) that the intended conduct is "arguably proscribed by" the challenged regulation; and (3) that "there exists a credible threat of prosecution thereunder" that is "sufficiently imminent." See Upsolve, Inc. v. James, 155 F.4th 133, 139 (2d Cir. 2025). An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur. See Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014). The claim of possible future injury

is not sufficient to confer standing. See Whitmore v. Arkansas, 495 U.S. 149, 158 (1990).

To satisfy the injury in fact element, a plaintiff must have suffered an invasion of a "legally protected interest which is concrete and particularized . . . [which means] the injury must affect the plaintiff in a personal and individual way." See Lujan, 504 U.S. at 560, 560 n.1. A plaintiff may not sue to vindicate the statutory rights of others. See Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016), as revised (May 24, 2016); Singleton v. Wulff, 428 U.S. 106, 114 (1976) ("one may not claim standing . . . to vindicate the constitutional rights of some third party").

The defendant argues that Mr. Sherman has no standing. See Mot. SJ at 11. They argue that Mr. Sherman himself noted that, even before the open carry restrictions, he never carried firearms openly and publicly in Connecticut and, more importantly, that he never had any plans to carry his firearm even after the passage of the law. See Exhibit F, p. 42. Additionally, the defendant points to testimony of Mr. Sherman noting that he could not afford to purchase more than three handguns in a month. See Exhibit F, p. 42-45. Mr. Sherman stated he had no intention of carrying openly or purchasing more than three handguns a month. Id. Although he argues that he would if he had the ability and opportunity, it is undisputed that Mr. Sherman has not "purchased more than three handguns a month." See Pltf's Opp'n at 14.[1]

[1] The plaintiff's cite no evidence to support these claims. Unsupported allegations do not create a material issue of fact. See Lindsay v. Cook, No. 3:19-cv-1486, 2021 WL 5827080, at *2 (D. Conn. Dec. 7, 2021). Failure to provide specific citations to evidence may result in the court deemed admitted certain facts support by the evidence. See Martin v. Town of Simsbury, 505 F. Supp. 3d 116, 125 (D. Conn. 2020), aff'd, No. 20-4266, 2022 WL 244084 (2d Cir. Jan. 27, 2022).

Additionally, the plaintiffs violated this court's local rule 56 by not citing in their brief to information on the record; there were paragraphs with no citations at all, simply assertions backed by nothing. See Pltf's Opp'n at 7; Local Rules District Connecticut Rule 56.

Therefore, the defendant is correct that Mr. Sherman has no standing. In his deposition, Mr. Sherman testified that he never open carried before the challenged law was passed. See Exhibit F, p. 35-36. Despite that testimony, Mr. Sherman denied that Statement of Fact that he had no intention to open carry. Id. at p. 40. However, this testimony does not create an issue of fact as to the Statement: "Plaintiff Sherman has never open carried in Connecticut and has never purchased more than three handguns in a year, nor does he have any intention to do either. Rather, he seeks to "stand[ ] up" for the rights of those who do." See Stat. of Facts at ¶ 5.

While plaintiffs may dispute Mr. Sherman's intention, they cite to no facts. See Def's Reply at 2. Mr. Sherman himself testifies that he "never had any plans" or intention to carry his weapons openly. See Stat. of Facts at ¶ 5; Exhibit F. p. 40-41.

Additionally, Mr. Sherman testified he had no intentions or even the means to purchase more than three handguns in the proscribed period. See Stat. of Facts at ¶ 6; Exhibit F p. 42 ("I can't afford three handguns in a month."). These admissions fall far below even a "some day" intention, which was already rejected by the Supreme Court as a basis to confer standing, see Lujan, 504 U.S. at 564, let alone by the Connecticut Supreme Court. See Gay & Lesbian L. Students Ass'n at Univ. of Connecticut Sch. of L. v. Bd. of Trs., Univ. of Connecticut, 236 Conn. 453, 465 (1996) (demonstrating an injury in fact rather than a conjectural or hypothetical one is required for standing). Simply because Mr. Sherman desires to stand up for someone else's rights does not confer standing. See generally Kowalski v. Tesmer, 543 U.S. 125, 130 (2004). Because Mr. Sherman has not established any injury in fact, the court has no jurisdiction. It dismisses his claims.

B. Mr. Tischer lacks standing to challenge the handgun purchase limitation because his vague plans to buy a handgun, despite financial limits, are insufficient to establish actual or imminent injury

The defendant further argues that Mr. Tischer lacks standing because he has no plans to engage in conduct proscribed by the law, and that he could not do so even if he had plans. See Mot. SJ at 12. The defense acknowledges that Mr. Tischer does not need to be arrested or prosecuted to challenge this statute, but there must be an intention to engage in the conduct and a credible threat of prosecution. See Goldstein v. Hochul, 680 F. Supp. 3d 370, 386 (S.D.N.Y. 2023).

Although Mr. Tischer has not "purchased more than three handguns a month," he argues he would if he had the ability and opportunity. See Pltf's Opp'n at 14. The plaintiffs argue that Mr. Tischer does have standing to challenge the open carry ban. Id. at 7. They argue that Mr. Tischer previously open carried in Connecticut and that the defendant does not dispute Mr. Tischer's standing to challenge the open carry ban. Id.

Mr. Tischer lacks standing to challenge the three handgun commercial sales limit because he has no plans or ability to engage in the conduct prohibited. While he does not have to be prosecuted to challenge a statute, he must show an intention to engage in the conduct. See Vitagliano v. Cnty. of Westchester, No. 23-30, 71 F.4th 130, 136 (2d Cir. June 21, 2023) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013). Mr. Tischer has never purchased more than three handguns in a month, nor even three firearms in a month, and when questioned he conceded, for him, it is prohibitively expensive to do so. See Stat. of Facts at ¶ 2; Exhibit G p. 23,35. Mr. Tischer was unable to identify which handguns he would purchase if the law did not prevent him. See Exhibit G. at p. 35-36. Mr. Tischer currently makes only $2,000 dollars annually. See Stat. of Facts at ¶ 3. He testified that he would purchase

handguns if he possessed the funds to do so, yet could not reasonably do so because that would involve spending almost his entire annual salary on handguns. See Stat. of Facts at ¶¶ 2-4, Exhibit G. at p. 35, 36; Mot. SJ at 13. See Carney v. Adams, 141 S. Ct. 493, 501-02 (2020) (plaintiff did not show he was able and ready for judicial vacancy, and therefore failed to establish standing). Mr. Tischer's intention to buy more than three handguns in a month is contradicted by his means and thus those intentions are too ephemeral. Mr. Tischer admits he has no plans to purchase more than three handguns. See Stat. of Facts at ¶¶ 2-4, Exhibit G. at p. 35, 36. Thus, he has not established standing. The court dismisses his claim regarding the limits on commercial handgun sales, G.C.S. section 29-33(f).

C. We the Patriots cannot establish organizational or associational standing

The defendant asserts that We the Patriots has no organizational or associational standing. See Mot. SJ at 14. The defendant further argues We the Patriots has no standing to bring a section 1983 under Second Circuit precedent. Id. at 15. Even if that were not the case, the defendant claims that We the Patriots cannot establish that its individual members would have standing. Id. The defendant argues that We the Patriots has no claim even under a theory of organizational standing because there is no traceable injury to the group. Id. at 15-16.

The plaintiffs simply respond in a conclusory fashion that We the Patriots is an "association and should be afforded associational standing." See Pltf's Opp'n at 7. Further, they note that defending and litigating constitutional rights is part of its purpose and that some of the members are adult residents in Connecticut. Id.

We the Patriots has no standing. Under current standing jurisprudence, an organization may assert two distinct types of standing: (1) organizational standing, and

(2) associational standing. Under the organizational standing theory, "an association may have standing in its own right to seek judicial relief to itself and to vindicate whatever rights and immunities the association itself may enjoy." See Warth v. Seldin, 422 U.S. 490, 511 (1975).

To establish organizational standing, an organizational plaintiff "must meet the same standing test that applies to individuals." See Rodriguez v. Winski, 444 F. Supp. 3d 488, 492 (S.D.N.Y. 2020) (citing Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 649 (2d Cir. 1998)). We the Patriots must show (1) a distinct and palpable injury in fact to itself as an organization; (2) that is fairly traceable to the challenged action; and (3) that a favorable decision would redress its injuries. See Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011). An organization suffers an injury when it can show a "perceptible impairment" to its core activities, resulting in "some perceptible opportunity cost" as a result of the alleged violation. Id. at 157. "[A]n organization lacks standing to sue in its own right as a result of injuries that are not fairly traceable to [it]." See Nat'l Rifle Assoc. of Am. v. Cuomo, 480 F. Supp.3d 404, 411 (N.D.N.Y. 2020) (quoting Doe v. Vill. of Mamaroneck, 462 F. Supp. 2d 520, 541 (S.D.N.Y. 2006) (citing Bennett v. Spear, 520 U.S. 154, 162 (1997))). "Abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. We the Patriots' allegations in the Complaint set forth no impairment to its core activities. See Complaint at ¶ 2; Stat. of Facts at ¶ 7. We the Patriots fails to allege what core activities it has been forced to limit or change due to the statutes. See, generally, Stat. of Facts at ¶ 7, 57. Any claims regarding "advocacy litigation" would only have fiscal costs. Spending money to advocate has been rejected as a theory of standing. See Food &

Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 394 (2024); Conn. Parents Union v. Wentzell, 462 F. Supp. 3d 167, 173 (D. Conn. 2020), aff'd, 8 F.4th 167 (2d Cir. 2021).

The Second Circuit unquestionably has held that, any group lacks associational standing to sue under section 1983 for violations of the rights of its members. "It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." See Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011). We the Patriots clearly lacks associational standing for claims under 1983. Even if it were to somehow have associational standing, neither Mr. Tischer nor Mr. Sherman is noted to be a member. See Stat. of Facts at ¶ 60. We the Patriots cannot establish associational standing on their behalf. See Summers v. Earth Island Inst., 555 U.S. 488, 498-99 (2009) (associational standing requires that a plaintiff identify by name at least one member with standing). Thus, We the Patriots has no associational standing. Therefore, We the Patriots cannot meet either associational or organizational standing, and all of its claims are dismissed.[2]

D. Plaintiff's open carry claim is foreclosed by Frey v. City of N.Y.

The only party with standing on the open carry claim is Mr. Tischer. He seeks to challenge the open carry statute. However, that statute is within historical tradition and recent precedent.[3] The Second Amendment provides that, "A well regulated Militia,

---

[2] Based on the above, no plaintiff has standing to sue in regard to the pre-enforcement challenge of the three handguns sale limit. This court will not analyze standing further, but it appears to this court that all plaintiffs would fail to meet the other requirements for standing. See, generally, Vitagliano v. Cty. of Westchester, 71 F.4th 130, 136 (2d Cir. 2023); Chevron Corp. v. Donziger, 833 F.3d 74, 121 (2d Cir. 2016) ("The traceability requirement of Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury.").

[3] The court will only examine the Second Amendment claim regarding the open carry statute as no plaintiff has standing to challenge the commercial sale limitation. See, supra, Part IV A-C. However,

being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." See U.S. CONST. Amend. II. "But that right . . . is 'not unlimited,' just as no other right in the Bill of Rights is unlimited." See Antonyuk v. James, 120 F.4th 941, 961 (2d Cir. 2024) (quoting District of Columbia v. Heller, 554 U.S. 570, 595 (2008)). The Second Amendment's right to carry firearms in self-defense is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." See New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111, 2128 (2022) (quoting Heller, 554 U.S. at 626). The Supreme Court instructs courts to now address whether modern firearm regulations are consistent with the Second Amendment's text and historical understanding. See Bruen, 142 S. Ct. 2111 at 2118.

As Bruen acknowledged, "[t]hroughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing . . . the manner of carry." See Frey v. City of New York, 157 F.4th 118, 138 (2d Cir. 2025) (citing Bruen, 597 U.S. at 38). The historical evidence demonstrates that States could lawfully eliminate one kind of public carry, open carry or concealed carry, as long as they left the other option open. Id. at 139. As Heller acknowledges, the majority of 19th century courts allowed statutory prohibitions on carrying concealed weapons. These provide a backdrop of a strong history of regulation, and sometimes criminalization of, one manner of public carrying of a firearm, as long as the prohibition is not total. Id.

---

as the Supreme Court recognized in Heller, there are categories of regulations that are presumptively lawful. See Heller, 554 U.S. at 626-627 One such category concerns the commercial sale of arms, and there is therefore clear precedent supporting the lawfulness of limitations on commercial sale. Id.

Recently, the Second Circuit ruled on the constitutionality of open carry restrictions. In Frey, the Second Circuit held that the New York open carry ban, is the "converse of many of these historical laws: it eliminates open carry while permitting concealed carry." Id. The Second Circuit explained that historical analogues do not need to be a twin, but only "relevantly similar." Id., citing Bruen, 598 U.S. at 29. New York's open carry ban burdens the right to a similar degree: it simply eliminates one kind of carry while leaving open the other option. Id. The reason it does so now is the same as the historical analogues: to regulate a mode of bearing arms that the legislature has deemed dangerous to society. Id., citing State v. Jumel, 13 La. Ann. 399, 400 (1858); see also State v. Chandler, 5 La. Ann. 489, 490 (1850) (holding that a law banning concealed carry was "absolutely necessary to counteract a vicious state of society . . . and to prevent bloodshed and assassinations committed upon unsuspecting persons"); State v. Reid, 1 Ala. 612, 617 (1840) (holding that "a law which is intended merely to promote personal security, and to put down lawless aggression and violence, and to that end inhibits the wearing of certain weapons, in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the constitution"). New York determined that open carry was the more dangerous mode of public carry, a decision strictly within the sphere of the legislative responsibility. See Frey, 157 F.4th at 139.

The Connecticut restrictions are practically identical. The purpose of the regulations is that common law recognized that open carry armed travel by its very

nature created concern in others.[4] See, generally, Mot. SJ at 46-47. The Connecticut Legislature intended to address the concern of others when people walking around with open carry guns intimidate others. See Testimony before the Connecticut Joint Committee on the Judiciary on An Act Addressing Gun Violence, P.A. No. 23-53 (March 5, 2023) quoting Elsa Peterson Obuchokowski (voter in Norwalk, CT) and Jonathan Perloe (Communications Director for CT Against Gun Violence). Connecticut's open carry prohibition minimally burdens Second Amendment rights, and it leaves open an avenue of carrying a firearm – concealed carry – available to the public. Similar to Frey, simply because the plaintiffs do not like the manner in which the state "allows public carry – concealed rather than open . . . does not mean that the enforcement against open carry is unconstitutional." See Frey v. Nigrelli, 661 F. Supp. 3d 176, 199 (S.D.N.Y. 2023), aff'd and remanded sub nom., Frey v. City of New York, 157 F.4th 118 (2d Cir. 2025). The Second Circuit holding in Frey is controlling.[5] The Connecticut open carry statute is constitutional. Accordingly, Summary Judgment is granted on the open carry provision for the defendant.

## V. CONCLUSION

No plaintiff has standing to assert jurisdiction on the three gun commercial sale provision. Only Mr. Tischer has standing to challenge the open carry provision.

---

[4] See Testimony before the Connecticut Joint Committee on the Judiciary on An Act Addressing Gun Violence, P.A. No. 23-53 (March 5, 2023) quoting Elsa Peterson Obuchokowski (voter in Norwalk, CT) and Jonathan Perloe (Communications Director for CT Against Gun Violence).

[5] The plaintiffs' Sur-reply on the Frey case seeks to undercut its control here on the grounds that it is a Ruling on a Motion for Preliminary Injunction. See Sur-reply at 1-2. However, the court views the Frey opinion deciding the denial of the Motion for Preliminary Injunction as a matter of law, i.e. there is no legal basis for the claim for which the plaintiffs in Frey seek a preliminary injunction. Even if this court is incorrect, and the Frey holding on New York's open carry ban is not controlling law, it is this court's decision that Connecticut has the authority under the Second Amendment to elect to prohibit one avenue of carrying a firearm – open carry – if Connecticut leaves open a different avenue of carrying a firearm – concealed carry.

However, his claim is precluded by Frey, and as a matter of law, his claim is without merit. For the reasons stated above, the court grants the defendant's Motion for Summary Judgment (Doc. No. 32).

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of March, 2026.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

WE THE PATRIOTS USA, INC,
MATTHEW SHERMAN,
BRANDON TISCHER,
*Plaintiff,*

Civil No. 3:24-cv-01054 (JCH)

v.

JOHN P. DOYLE, JR.,
*Defendant.*

March 3, 2026

**JUDGMENT**

This matter came on for consideration on the defendant's Motion for Summary Judgment (Doc. No. 32) before the Honorable Janet C. Hall, United States District Judge. The Court has reviewed all the papers filed in conjunction with the motion and on March 2, 2026, entered a Ruling (Doc. No. 40) GRANTING the defendant's motion.

It is therefore ORDERED, ADJUDGED, and DECREED that Judgment is entered in favor of the defendant, John P. Doyle, Jr. and against the plaintiffs, We The Patriots USA, Inc, Matthew Sherman, and Brandon Tischer and the case is closed.

Dated at New Haven, Connecticut, this 3rd day of March 2026.

DINAH MILTON KINNEY, Clerk

By: ____/s/________

Liana Barry, Deputy Clerk

EOD: March 3, 2026

## SECOND AMENDMENT AS TAKEN FROM:
WWW.ARCHIVES.GOV/FOUNDING-DOCS/BILL-OF-RIGHTS-TRANSCRIPT

**Amendment II**

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

## CONNECTICUT GENERAL STATUTES SECTION 29-35(A)(2)

(2) No person shall knowingly carry any firearm with intent to display such firearm, except when such person is within such person's dwelling house, on land leased, owned or otherwise possessed by such person or within the place of business of such person, or such person is engaged in firearm training or bona fide hunting activity, or such person has been explicitly permitted by another person to carry such firearm with intent to display such firearm while within such other person's dwelling house, on land leased, owned or otherwise possessed by such other person, or within the place of business of such other person. For the purposes of this subdivision, a person shall not be deemed to be carrying a firearm with intent to display such firearm if such person has taken reasonable measures to conceal the fact that such person is carrying a firearm. Neither a fleeting glimpse of a firearm nor an imprint of a firearm through such person's clothing shall constitute a violation of this subdivision. If a person displays a firearm temporarily while engaged in self-defense or other conduct that is otherwise lawful, such display shall not constitute a violation of this subdivision. The provisions of this subdivision shall not apply to any (A) security guard or other person employed to perform the duties of protecting public or private property while in the performance of such duties or traveling to or from such duties,…

## CONNECTICUT GENERAL STATUTES SECTION 29-33(F)

*(1)The Commissioner of Emergency Services and Public Protection shall not issue more than three authorization numbers for sale at retail of a pistol or revolver to any transferee within a thirty-day period*, except that if such transferee is certified as a firearms instructor by the state pursuant to section 29-28 or the National Rifle Association, said commissioner shall not issue more than six authorization numbers within a thirty-day period.

APPEAL,CLOSED,EFILE,SDV

# U.S. District Court
# District of Connecticut (New Haven)
# CIVIL DOCKET FOR CASE #: 3:24-cv-01054-JCH

We The Patriots USA, Inc. et al v. Doyle, Jr.
Assigned to: Judge Janet C. Hall
Cause: 28:1331 Fed. Question

Date Filed: 06/17/2024
Date Terminated: 03/03/2026
Jury Demand: Defendant
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**We The Patriots USA, Inc** represented by **Christopher DeMatteo**
Willinger, Willinger & Bucci, PLLC
1000 Bridgeport Ave.
Fl. 5
Shelton, CT 06484
203-366-3939
Fax: 475-269-2907
Email: cdematteo@wwblaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman A. Pattis**
Pattis & Paz, LLC
171 Orange Street
2nd Floor
New Haven, CT 06510
203-393-3017
Fax: 203-393-9745
Email: npattis@pattispazlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Matthew Sherman** represented by **Christopher DeMatteo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman A. Pattis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brandon Tischer** represented by **Christopher DeMatteo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman A. Pattis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**John P. Doyle, Jr.** represented by **James Michael Belforti**
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5436
Fax: 860-808-5591
Email: james.belforti@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Janelle Medeiros**
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5020
Fax: 860-808-5347
Email: janelle.medeiros@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/17/2024 | 1 | COMPLAINT against All Plaintiffs ( Filing fee $405 receipt number ACTDC-7803740.), filed by We The Patriots USA, Inc., Brandon Tischer, Matthew Sherman.(Pattis, Norman) (Entered: 06/17/2024) |
| 06/17/2024 | | Request for Clerk to issue summons as to John Doyle, Jr.. (Pattis, Norman) (Entered: 06/17/2024) |
| 06/17/2024 | 2 | Notice: Pursuant to Federal Rule of Civil Procedure 7.1, a disclosure statement must be filed with a party's first appearance, pleading, petition, motion, response, or other request addressed to the Court and must be supplemented if any required information changes during the case.<br>Signed by Clerk on 6/17/2024.(Maturo, F.) (Entered: 06/17/2024) |
| 06/17/2024 | | Judge Janet C. Hall and Judge S. Dave Vatti added. (Freberg, B) (Entered: 06/17/2024) |
| 06/17/2024 | 3 | Order on Pretrial Deadlines: Amended Pleadings due by 8/16/2024 Discovery due by 12/17/2024 Dispositive Motions due by 1/21/2025<br>Signed by Clerk on 6/17/2024.(Barry, L.) (Entered: 06/17/2024) |
| 06/17/2024 | 4 | ELECTRONIC FILING ORDER FOR COUNSEL - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER<br>Signed by Judge Janet C. Hall on 6/17/2024.(Barry, L.) (Entered: 06/17/2024) |

| | | |
|---|---|---|
| 06/17/2024 | 5 | Standing Protective Order<br>Signed by Judge Janet C. Hall on 6/17/2024.(Barry, L.) (Entered: 06/17/2024) |
| 06/17/2024 | 6 | Standing Order re: Discovery.<br>Signed by Judge Janet C. Hall on 6/17/2024.(Barry, L.) (Entered: 06/17/2024) |
| 06/17/2024 | 7 | Notice of Option to Consent to Magistrate Judge Jurisdiction.<br>(Barry, L.) (Entered: 06/17/2024) |
| 06/17/2024 | 8 | NOTICE TO COUNSEL/SELF-REPRESENTED PARTIES : Counsel or self-represented parties initiating or removing this action are responsible for serving all parties with attached documents and copies of 6 Standing Order re: Discovery, 2 Notice re: Disclosure Statement, 4 Electronic Filing Order, 1 Complaint filed by We The Patriots USA, Inc, Brandon Tischer, Matthew Sherman, 5 Standing Protective Order, 7 Notice of Option to Consent to Magistrate Judge Jurisdiction, 3 Order on Pretrial Deadlines<br>Signed by Clerk on 6/17/2024.(Barry, L.) (Entered: 06/17/2024) |
| 06/17/2024 | 9 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *John P. Doyle, Jr* with answer to complaint due within *21* days. Attorney *Norman A. Pattis* *Pattis & Associates, LLC* *383 Orange Street 1st Floor* *New Haven, CT 06511*. (Barry, L.) (Entered: 06/17/2024) |
| 06/17/2024 | 10 | Disclosure Statement *Pursuant to Plaintiffs' Rule 7.1 Corporate Disclosure Statement* by Matthew Sherman, Brandon Tischer, We The Patriots USA, Inc. (Pattis, Norman) (Entered: 06/17/2024) |
| 07/16/2024 | 11 | SUMMONS Returned Executed by We The Patriots USA, Inc. All Defendants. (Pattis, Norman) (Entered: 07/16/2024) |
| 10/03/2024 | 12 | NOTICE of Appearance by James Michael Belforti on behalf of John P. Doyle, Jr (Belforti, James) (Entered: 10/03/2024) |
| 10/03/2024 | 13 | NOTICE of Appearance by Janelle Medeiros on behalf of John P. Doyle, Jr (Medeiros, Janelle) (Entered: 10/03/2024) |
| 10/03/2024 | 14 | Consent MOTION for Extension of Time until November 2, 2024 to file a response to the plaintiff's Complaint by John P. Doyle, Jr. (Medeiros, Janelle) (Entered: 10/03/2024) |
| 10/07/2024 | 15 | ORDER granting 14 Consent MOTION for Extension of Time until November 2, 2024 to file a response to the plaintiff's Complaint. SO ORDERED by Judge Janet C. Hall on 10/7/2024. (Barry, L.) (Entered: 10/07/2024) |
| 10/07/2024 | | Answer deadline updated for John P. Doyle, Jr to 11/2/2024. (Barry, L.) (Entered: 10/07/2024) |
| 11/04/2024 | 16 | MOTION to Dismiss by John P. Doyle, Jr.Responses due by 11/25/2024 (Attachments: # 1 Memorandum in Support)(Belforti, James) (Entered: 11/04/2024) |
| 11/14/2024 | | Set Deadlines/Hearings: Rule 26 Meeting Report due by 11/29/2024 (DeRubeis, B.) (Entered: 11/14/2024) |
| 11/29/2024 | 17 | Joint REPORT of Rule 26(f) Planning Meeting. (Belforti, James) (Entered: 11/29/2024) |
| 12/05/2024 | 18 | SCHEDULING ORDER Regarding Case Management Plan: Discovery due by 6/1/2025. Plaintiff to disclose experts by 2/1/2025. Defendant to disclose experts by 3/1/2025. Dispositive Motions due by 7/1/2025. Joint Status Report due by 3/4/2025. Joint Trial Memorandum due by 7/1/2025<br>Signed by Judge Janet C. Hall on 12/5/2024.(Barry, L.) (Entered: 12/05/2024) |

| | | |
|---|---|---|
| 12/11/2024 | 19 | ORDER: Absent objection and upon review, the 16 Motion to Dismiss is granted. The court lacks jurisdiction over Counts 2 and 4.<br>SO ORDERED by Judge Janet C. Hall on 12/11/2024. (DeRubeis, B.) (Entered: 12/11/2024) |
| 12/26/2024 | 20 | ANSWER to 1 Complaint with Affirmative Defenses by John P. Doyle, Jr.(Medeiros, Janelle) (Entered: 12/26/2024) |
| 02/25/2025 | 21 | Consent MOTION for Extension of Time until April 1, 2025 *of the* Defendant's expert disclosure deadline by John P. Doyle, Jr. (Belforti, James) (Entered: 02/25/2025) |
| 02/26/2025 | 22 | ORDER granting 21 Motion for Extension of Time until April 1, 2025 of the Defendant's expert disclosure deadline. SO ORDERED by Judge Janet C. Hall on 2/26/2025. (Barry, L.) (Entered: 02/26/2025) |
| 03/14/2025 | 23 | NOTICE TO COUNSEL/PRO SE LITIGANTS: Counsel and Pro Se Litigants are reminded that an initial Joint Status Report in this case was due on 3/4/2025 with subsequent Status Reports due every 90 days thereafter. A Joint Status Report of Counsel must be filed within 14 days of this Notice. Failure to file by this deadline may result in sanctions against counsel for failure to comply with the courts Order.<br>SO ORDERED by Judge Janet C. Hall on 3/14/2025. (Barry, L.) (Entered: 03/14/2025) |
| 03/14/2025 | | Set Deadlines/Hearings: Joint Status Report due by 3/28/2025 (Barry, L.) (Entered: 03/14/2025) |
| 03/28/2025 | 24 | Joint STATUS REPORT *filed on behalf of both parties* by John P. Doyle, Jr. (Belforti, James) (Entered: 03/28/2025) |
| 03/31/2025 | | Set Deadlines/Hearings: Joint Status Report due by 6/26/2025 (Barry, L.) (Entered: 03/31/2025) |
| 05/05/2025 | 25 | Joint MOTION for Extension of Time until 07/01/2025 and 08/01/2025 Discovery Deadline (from 06/01 to 07/01/2025) and Dispositive Motions Deadline (from 07/01 to 08/01/2025) by Matthew Sherman, Brandon Tischer, We The Patriots USA, Inc. (Pattis, Norman) (Entered: 05/05/2025) |
| 05/07/2025 | 26 | ORDER granting 25 Motion for Extension of Time Discovery Deadline and Dispositive Motions Deadline. SO ORDERED by Judge Janet C. Hall on 5/7/2025. (Barry, L.) (Entered: 05/07/2025) |
| 05/07/2025 | | Set Deadlines/Hearings: Discovery due by 7/1/2025. Dispositive Motions due by 8/1/2025. Joint Trial Memorandum due by 8/1/2025 (Barry, L.) (Entered: 05/07/2025) |
| 06/25/2025 | 27 | Joint MOTION for Extension of Time by Matthew Sherman, Brandon Tischer, We The Patriots USA, Inc. (Pattis, Norman) (Entered: 06/25/2025) |
| 06/26/2025 | 28 | Joint STATUS REPORT by John P. Doyle, Jr. (Belforti, James) (Entered: 06/26/2025) |
| 06/26/2025 | 29 | ORDER granting in part 27 Motion for Extension of Time. SO ORDERED by Judge Janet C. Hall on 6/26/2025. (Barry, L.) (Entered: 06/27/2025) |
| 06/26/2025 | | Set Deadlines/Hearings: Discovery due by 7/15/2025. Dispositive Motions due by 8/15/2025. Joint Trial Memorandum due by 8/15/2025 (Barry, L.) (Entered: 06/27/2025) |
| 08/06/2025 | 30 | MOTION for Leave to File Excess Pages by John P. Doyle, Jr. (Medeiros, Janelle) (Entered: 08/06/2025) |
| 08/12/2025 | 31 | ORDER granting 30 Motion for Leave to File Excess Pages. SO ORDERED by Judge Janet C. Hall on 8/12/2025. (Barry, L.) (Entered: 08/12/2025) |

| | | |
|---|---|---|
| 08/15/2025 | 32 | MOTION for Summary Judgment by John P. Doyle, Jr.Responses due by 9/5/2025 (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G) (Medeiros, Janelle) (Entered: 08/15/2025) |
| 08/25/2025 | 33 | Consent MOTION for Extension of Time until 09/26/2025 to Respond to Motion for Summary Judgment by Matthew Sherman, Brandon Tischer, We The Patriots USA, Inc. (Pattis, Norman) (Entered: 08/25/2025) |
| 08/26/2025 | 34 | ORDER granting 33 Motion for Extension of Time until 09/26/2025 to Respond to Motion for Summary Judgment. SO ORDERED by Judge Janet C. Hall on 8/26/2025. (Barry, L.) (Entered: 08/26/2025) |
| 09/25/2025 | 35 | NOTICE of Appearance by Christopher DeMatteo on behalf of Matthew Sherman, Brandon Tischer, We The Patriots USA, Inc (DeMatteo, Christopher) (Entered: 09/25/2025) |
| 09/25/2025 | 36 | Memorandum in Opposition re 32 MOTION for Summary Judgment filed by Matthew Sherman, Brandon Tischer, We The Patriots USA, Inc. (Attachments: # 1 Statement of Material Facts Plaintiffs' Local Rule 56(a)(2) Statement, # 2 Exhibit 1: Public Act 23-53, # 3 Exhibit 2: Deposition of Matthew Sherman, # 4 Exhibit 3: Deposition of Brandon Tischer, # 5 Exhibit 4: Declaration of Brian Festa)(DeMatteo, Christopher) (Entered: 09/25/2025) |
| 10/10/2025 | 37 | REPLY to Response to 32 MOTION for Summary Judgment filed by John P. Doyle, Jr. (Medeiros, Janelle) (Entered: 10/10/2025) |
| 02/17/2026 | 38 | ORDER: The plaintiffs are permitted to file a short (less than 10 pages) Reply to the arguments regarding Frey v. City of New York , in the defendants' Reply brief, within 7 days.<br>SO ORDERED by Judge Janet C. Hall on 2/17/2026. (Barry, L.) (Entered: 02/17/2026) |
| 02/24/2026 | 39 | RESPONSE re 37 Reply to Response to Motion filed by Matthew Sherman, Brandon Tischer, We The Patriots USA, Inc. (DeMatteo, Christopher) (Entered: 02/24/2026) |
| 03/02/2026 | 40 | Ruling on Motion for Summary Judgment (Doc. No. 32 )<br><br>For the reasons stated herein, the court grants the defendant's Motion forSummary Judgment (Doc. No. 32 ). Signed by Judge Janet C. Hall on 3/2/2026. (Barry, L.) (Entered: 03/03/2026) |
| 03/03/2026 | 41 | JUDGMENT entered in favor of John P. Doyle, Jr against We The Patriots USA, Inc, Brandon Tischer, Matthew Sherman.<br><br>For Appeal Forms please go to the following website:<br>http://www.ctd.uscourts.gov/forms/all-forms/appeals forms<br>Signed by Clerk on 3/3/2026.(Barry, L.) (Entered: 03/03/2026) |
| 03/03/2026 | | JUDICIAL PROCEEDINGS SURVEY - FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link: |

| | | |
|---|---|---|
| | | https://ecf.ctd.uscourts.gov/cgi-bin/Dispatch.pl?survey (Barry, L.) (Entered: 03/03/2026) |
| 03/12/2026 | 42 | NOTICE OF APPEAL as to 41 Judgment, by Matthew Sherman, Brandon Tischer, We The Patriots USA, Inc. Filing fee $ 605, receipt number ACTDC-8533804. (Pattis, Norman) (Entered: 03/12/2026) |
| 03/13/2026 | 43 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 42 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Dinah Milton Kinney, Clerk. Documents manually filed not included in this transmission: none. (Barry, L.) (Entered: 03/13/2026) |

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **WE THE PATRIOTS USA, INC.** | ) | **CIVIL ACTION NO.** |
| **MATTHEW SHERMAN** | ) | **24-1054** |
| **BRANDON TISCHER** | ) | |
| **PLAINTIFFS** | ) | |
| **VS.** | ) | |
| | ) | |
| **JOHN P. DOYLE, JR.** | ) | |
| **DEFENDANT** | ) | **JUNE 17, 2024** |

## PLAINTIFFS' RULE 7.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, the undersigned, as attorney for the Plaintiffs, certify that, to the best of our knowledge, We The Patriots USA, Inc., is a 501(c)(3) organization supported by private donations. It has no parent corporations, and there is no publicly held corporation owning 10% or more of their stock.

**THE PLAINTIFFS**

**By: /s/ Norman A. Pattis, Esq.**
Norman A. Pattis, Esq.
PATTIS & PAZ, LLC
383 Orange St., 1st Floor
New Haven, CT 06511
Tel: (203) 393-3017
Fax: (203) 393-9745
Email: npattis@pattispazlaw.com

## CERTIFICATION

I hereby certify that on June 17, 2024, a copy of the foregoing was filed electronically. Notice of this filing was sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**By: /s/ Norman A. Pattis, Esq.**
Norman A. Pattis, Esq.
Fed. Bar. No.: ct13120